## CHICAGO RY. EQUIPMENT CO. v. DAVIS BRAKE BEAM CO.

## DAVIS BRAKE BEAM CO. v. CHICAGO RY. EQUIPMENT CO.

Circuit Court of Appeals, Third Circuit. October 4, 1928.

Nos. 3649, 3661.

George P. Fisher and Cyril A. Soans, both of Chicago, Ill., and Edward A. Lawrence, of Pittsburgh, Pa., for plaintiff.

Jo Baily Brown and Paul N. Critchlow, both of Pittsburgh, Pa., for defendant.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court holding the Kiesel patent, No. 997,922, valid and infringed, and the Williams patent, No. 997,888, the Cornwall patent, No. 1,277,196, and the Busse patent, No. 1,480,742, not infringed. Accordingly, the decree ordered an injunction and accounting as to the Kiesel patent and a dismissal of the bill as to Williams, Cornwall, and Busse patents.

The appeal brings before us that part of the decree relating to the Kiesel and Busse patents only. That part relating to the Williams and Cornwall patents was not appealed. Our consideration, therefore, is confined to the Kiesel and Busse patents.

### The Kiesel Patent.

The invention embodied in this patent relates to improvements in "third suspensions" for brake beams in railroad cars. Claims 2, 6, 10, and 14 are in issue.

A brake beam in general use in railroads as described by the patents in suit is triangular in form. The heavy compression member forms the base of the triangle, and the two sides of the tension member between the strut nose (sometimes called the "shoe," "carrier," or "sliding chair") and the brake shoe at each end of the compression beam form the sides of the triangle. The strut, or bar running from the compression beam to the "carrier," divides the triangle into two right triangles and the strut is the hypotenuse of each. The brake shoes contact with the periphery of the car wheels when the brake is applied. The compression beam is suspended from the truck frame by a chain or hanger. A lever extending through the strut to which it is attached by means of a pin or bolt serves to apply power to the brakes.

When the car wheels and brake shoes are new and unworn, the curvature of the shoes corresponds with that of the wheels, and when the brakes are applied, the shoes bear uniformly on the peripheries of the wheels. When, however, the wheels have become worn and distorted by wear and strain so that they have to be "returned," "trued," and reduced from 33 to 30 inches in diameter, as is usual, the original concentric relation of the wheels and brake shoes is changed and the efficiency of the brake greatly impaired. It became necessary to provide some means to offset this changed relation. The problem of providing this means had been long recognized and various persons had contributed toward its solution. These contributions are disclosed in various prior art patents, among the outstanding of which (prior to Kiesel) are those issued to Williamson, No. 567,428; to Johns, No. 696,641; and to Paris, No. 808,059.

The contribution of Kiesel is described by the District Judge in the following language: "Such means is found in the form of Kiesel's spring support which, it will be remembered, has its outer end inclined upwardly. The brakebeam, when the brakes are applied, rides upon the spring, the upturned part of which counteracts the slack of the beam and preserves the proper concentric relation between the brake shoe and the wheel."

Kiesel's invention is a third suspension or spring track, which consists of a flat piece of resilient steel, one end of which is attached to the middle of the spring plank of the truck and from there extends beneath the compression member and directly under and slightly beyond the strut. This end of the spring

track is turned upwards and forms an upwardly inclined plane on which the "carrier" rests. The "carrier" is kept in contact with the spring support during the operation of the brake by flanges on the legs of the carrier or by an orifice or opening through which the third suspension spring passes. When the brake is applied, the carrier on the end of the strut through which the tension member passes rides upon the incline of the resilient spring and preserves the concentric relation of the wheels and brake shoes, as before stated. The function of the spring support is to preserve the concentric relation between the wheels and brakes and also to catch the brake beam if one of the hanger links breaks.

But the device of Paris had a straight spring bar support which likewise acted as a safety device for the same purpose. The novelty of the Kiesel patent is said to consist in the provision of an inclined track member of highly resilient material, in combination with a special carrier adapted to make the inclined spring co-operative as a third suspension with an extension of the strut at the free apex of a triangular brake beam. The essential difference between the spring support of Paris and that of Kiesel is that, in the Kiesel device, the end under, and connected with, the carrier was lengthened and upturned. His improvement, therefore, over Paris consisted in lengthening the spring and in turning the end upwards. There were before Kiesel resilient springs with straight ends and nonresilient springs with ends inclined upwards under the apex of the triangle. The conception, therefore, of a spring supporting track composed of resilient material was not new with Kiesel; neither was the conception of the upturned end of the track under the carrier. The novelty of his invention and his contribution to the art was the combination of these two elements. He merely added resilience to the already upturned track or turned up the end of the already resilient track.

Two questions arise: (1) Did this constitute invention? (2) If it did, is the patent restricted to the precise device disclosed, or is it entitled to a broad construction so that it includes any use of an inclined spring element wherever located beneath the brake beam, regardless of the carrier link element between the brake beam and supporting track?

There is a serious question about the validity of the Kiesel patent, if it is broadly construed so as to include any spring track or tracks wherever located under the brake beam.

The carrier attached to the free end of the strut at the apex of the triangular brake beam rests upon the upturned or inclined end of the spring track which at that end supports the brake beam. In fourth suspension supports, which the defendant Davis Brake Beam Company uses, the carrier, "nose or extension" of the strut, cannot be used as is done in third suspension supports. In fourth point or suspension supports, there are two resilient pieces of material, one on each side of the strut. One end of each is attached to the spring plank, and the other end to the tension member between the ends of the compression beam and the end of the strut or apex of the triangle.

The third point support furnishes a longer leverage for guidance of the brake beam when the brakes are applied. While the leverage is shorter and the problem of guiding the brakes may in consequence be harder, yet if one of the hangers breaks and one end of the brake beam falls on the fourth support, it furnishes a better and more certain safety device because it is near the end and does not have so much weight to carry. With fourth point supports, each support has only half the weight to carry that a third point support carries, if both hangers break. Mr. E. G. Busse, an expert testifying for the plaintiff, said that the construction of the Paris patent could not be used as a fourth point support. It is a third point support having a spring positioned under the nose of the strut and connected to it by the carrier, just as Kiesel's is. His construction discloses a third point support and is applicable to it alone. The third point construction of Kiesel could be modified and made into one support of a fourth point support by shortening the spring, placing it on one side of the strut, inclining the end upwards, and attaching it to the tension member. Then a duplicate spring would have to be put on the other side of the strut. This would require reorganization and modification. And this is just what the defendant did.

Kiesel's is not a broad, pioneer patent. He entered a field more or less crowded and is limited to the particular disclosures made. Each one of the four claims expressly mentions a "third suspension." The description and drawings show only a third point support organization, and do not contemplate any other essential element than an inclined spring beneath the end of the strut attached to a carrier. This is indicated by the following quotations from the specifications:

"This invention relates to a new and useful improvement in brake beam suspensions, and particularly to what is known as the third suspension support for brake beams."

"The present invention consists in providing the inner end of the strut of a trussed beam with a carrier, preferably arranged at an obtuse angle to the edges of the strut and having a support whereby it is maintained in proper relation to the inclined track or third suspension spring."

"The carrier forming the supporting element for the inner end of the strut is preferably made separate from the strut, although it may be cast integral therewith. By being made separately it can be made for holding the center of the beam without change in the strut casting."

"3 is the tension member and 4 the strut, which latter is provided with a nose or extension 5 of any desired form for the third suspension arrangement. In this nose or extension is mounted a carrier 6 having a leg or support 7 provided with suitable openings, through which the inclined track 8 of the third suspension spring passes."

In the Kiesel structure there is a necessary space between the strut and the spring support which must be bridged or filled in by the carrier on account of the obstruction which the lever would otherwise cause. But in fourth point supports, a carrier performing that function is unnecessary. This is shown by the testimony of Mr. Louis E. Endsley, one of plaintiff's experts, who said:

"In the Kiesel patent, the carrier shown as 6 in all of the figures of the drawing of this patent, except in Fig. 4, where it is called 7, is a spanner between the end of the strut and the inclined portion of the spring, and this spanner must have sufficient length to get down to a point where the inclined plane can rest or be placed. In other words, if the inclined plane had to be raised up to just strike the end of the strut, without this spanner distance, it would interfere with other points of the brake mechanism.

"In the third points support, if this third point spring was placed up until it struck even the end of the strut, as made for the old third point, such as Paris and Johns and Kiesel, it would strike this brake lever here (indicating) because the brake lever goes down this way inclined through the strut (indicating). It would be even worse if no added length was made at this end of the strut, that is, where the strut has no eye on the end. So that some distance down from the end of the strut, to get the inclined plane

of the suspension spring out of interference with the brake lever, had to be provided."

It is admitted that the carrier element must be used in the Kiesel structure as disclosed by his device, or it would be necessary to redesign the spring in order to have it supply the proper support. The structural problems and functions, and general organization of apparatus of third point supports are substantially different from fourth point supports. The Patent Office must have regarded the claims of the Kiesel patent to have been restricted to third point supports, for it did not cite against them the Williamson patent which had been the prior art for 15 years and which disclosed fourth point supports in the form of inclined tracks adapted to guide the tension members of a brake beam to maintain substantial parallelism of the beam. The plaintiff company through its engineer, Charles C. Williams, Jr., three years after the Kiesel patent issued, applied for a patent on a fourth point support. It covers essentially an inclined spring track support on each side of the central strut of the brake beam. Had it at that time thought that Kiesel covered this fourth point support, the application would not have been filed through the Kiesel attorney.

We think that the Kiesel patent, if valid, is restricted to the third point support, and as thus restricted the defendant, whose device shows a fourth point support, does not infringe.

### The Busse Patent.

The Busse patent was issued June 15, 1924, for an improvement in mounts for third or fourth point supports for brake beams. Plaintiff admits this to be a "minor improvement patent." It is a paper patent. The device which it discloses has never been manufactured and put into actual use.

In the ordinary car truck there are four wheels, two on each side of the spring plank. Brakes operate on each set of wheels. This requires a brake beam on each side of the spring plank. The spring tracks or supports for the front and rear brake beams were made in a single piece. The middle of this resilient piece of steel or spring support is attached to the middle of the spring plank, and each end of it serves as a spring support for the brake beams for each set of wheels. The means for attaching this double spring support to the spring plank constitutes the Busse invention.

Claims 3 and 6 are in issue and are as follows:

3. "The combination of a part of a car truck retaining means secured thereto, and a yielding third or fourth point support adapted to be engaged by said means, said support being, by its own resiliency adapted to be held in interlocking engagement with said part of the car truck."

6. "The combination of a part of a car truck, a resilient third or fourth point support detachably mounted thereon, and means co-operating with said support whereby it is stressed into locked position."

The "retaining means" and "means co-operating with said support," as described in the specifications, are Busse's contribution to the art. His spring plank is channel-shaped, inverted, with the channel facing downward. Riveted to the bottom of the inverted spring plank is a bracket somewhat longer than the width of the spring support. The middle of the bracket is bowed upwardly in the shape of a small arc, or part of a cylinder cut lengthwise. The middle of the spring support is bent or bowed in the same shape as the bend in the bracket so that the arc-like bend in the spring will fit in the bend in the bracket. The sides of the bracket resting on the spring plank are cut away at one end to the width of the spring support so as to permit the spring support to slip under the bracket, the bent part of the bracket serving as a housing for the bent portion of the spring support when the spring support is seated under the bracket. Attached to the side of the spring plank are two lugs wide enough apart to receive the spring support whose lateral movement is thereby prevented. Another method shown for attaching the spring support to the spring plank consists in cutting away a small square piece out of the spring plank and in providing a downwardly bent tongue in the spring support so that, when the support is seated in place on the plank under the bracket, the tongue registers with and enters into the opening cut away from the spring plank.

The means by which the defendant Davis Brake Beam Company attaches the spring support to the spring is shown in a patent No. 1,534,004, issued April 14, 1925, to W. E. Fowler, Jr., and assigned by him to the defendant. This patent is for "new and useful improvements in securing Brake-Beam Supports to Trucks." The Fowler patent calls spring tracks or supports, "spring bars or rails," and his invention "relates to certain improvements in the manner of attaching the rails described and claimed in an application filed February 28, 1924, by Broderick Haskell, Serial No. 695,795, which consists, generally stated, in forming the rail with a portion adapted to be passed through an opening in the spring plank and providing means whereby the portion projecting through the opening is prevented from accidental withdrawal." In other words, a U-shaped loop is formed in the middle of the rail, spring support, or bar, which is then passed through an opening in the spring plank, after which a locking pin passes through the loop of such length that its ends will bear on the upper face of the spring plank on the opposite sides of the opening. The pin is provided with shoulders or lugs to prevent it from slipping out of the loop. The rail being thus attached to the spring plank is held securely to it.

This means of attaching the rail or spring support to the spring plank does not infringe the Busse patent. The means of the two patents are so substantially unlike that we do not think the Fowler invention can possibly be held to infringe Busse's. So to hold would be unduly extending the law of mechancial equivalency, so as to include any and all means of attaching spring supports and spring planks together and would virtually blanket this particular branch of the art.

The decree, so far as it holds that defendant infringed the Kiesel patent, is reversed, and so far as it holds that it did not infringe the Busse patent, is affirmed.